UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIMOTHY C. MYER and JOHN E. GRISWOLD,<br><br>    Plaintiffs,<br><br>  v.<br><br>NITETRAIN COACH COMPANY INC.; NASHVILLE COACH, INC.,<br><br>    Defendants. | CASE NO. C06-804C<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Videotape (Dkt. No. 29), Defendants' Response thereto (Dkt. No. 32), and Plaintiffs' Reply (Dkt. No. 34). The Court, having carefully considered all of the papers submitted and determined that oral argument is not necessary, hereby GRANTS Plaintiffs' motion, as follows.

I.   **BACKGROUND AND FACTS**

Many of the facts of this case have been recited in a prior Order of this Court. (*See* September, 25, 2006 Order (Dkt. No. 22).) Relevant to the instant motion are the following facts. On June 18, 2004, Plaintiffs Tim Myer and John Griswold ("Plaintiffs") were sleeping in bunks on a touring coach of Defendant Nitetrain Coach Company, Inc. ("Nitetrain"). Plaintiff Griswold was sleeping in a bunk

ORDER – 1

directly above Plaintiff Myer's bunk. At or near Mt. Vernon, Washington, Plaintiff Griswold's bunk collapsed onto Plaintiff Myer, injuring both men. This lawsuit originally was filed in King Count Superior Court against Defendant Nitetrain. Subsequently, Defendant Nashville Coach, Inc. ("Nashville") was added to the lawsuit and the matter was removed to this Court. In September 2006, this Court denied Plaintiffs' motion to remand the case to state court.

The design of the collapsed bunk beds is central to this lawsuit. Critical to the instant motion is the fact that the bunks in which Plaintiffs were sleeping had been "reconfigured" from a three-bunk vertical arrangement to a two-bunk vertical arrangement prior to the incident. On February 9, 2006, Plaintiffs deposed Jack Winter, Defendant Nitetrain's Safety Manager. In his deposition, Mr. Winter testified to having made a videotape with Jamie Simmons, Defendant Nashville's foreman, showing the entire reconfiguration process from a three-bunk-high sleeping station to a two-bunk-high sleeping station in a model coach similar to the one where Plaintiffs slept. Mr. Winter had performed the same procedure prior to Plaintiffs' use of the bunks.

Plaintiffs requested this videotape from Defendants, arguing that it is critical to the liability issue. Defendants refused, claiming work product protection. In response, Plaintiffs filed this motion, contending that Nitetrain's insurance company requested the videotape in its regular course of business, not in anticipation of litigation as required for the work-product doctrine to apply. Further, Plaintiffs argue, even if the doctrine applies, they have shown substantial need for the videotape.

**II.  ANALYSIS**

   **A.  Work-Product Doctrine**

Work-product protection only applies to "documents and tangible things" prepared "in anticipation of litigation." FED. R. CIV. P. 26(b)(3). Work product may include documents or things prepared by a party or by or for a party's representative, which may be, *inter alia*, an attorney or insurer. *Id*. Thus, an attorney's involvement is not a prerequisite to applying the doctrine. However, "'[m]ore than the mere possibility of litigation must be evident' for materials to be considered immune from

ORDER – 2

discovery under the work-product doctrine." *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D. Wash. 2004) (quoting *Detection Sys., Inc. v. Pittway Co.*, 96 F.R.D. 152, 155 (W.D.N.Y. 1982)). "It is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation." *Id.* at 549–50. The point at which an attorney becomes involved in representing the party asserting the privilege may be relevant in this regard. The burden is on the party asserting the work-product privilege to show that the privilege exists. *Id.* at 549; *see also* FED. R. CIV. P 26(b)(3), R. 26(b)(5)(A). Finally, in order to reduce the element of surprise and facilitate settlement, courts liberally construe pretrial discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

This Court has stated that insurance companies have a "routine duty to investigate accidents [and] such materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary." *Heath*, 221 F.R.D. at 550 (citing *Schmidt v. Cal. State Auto. Ass'n*, 127 F.R.D. 182, 184 (D. Nev. 1989)). Defendants argue that Nitetrain is in the business of purchasing and leasing motor coaches, and thus creating such a videotape is clearly in anticipation of litigation. However, because the insurance company requested the videotape, the focus should be on whether Nitetrain's insurance company requested the videotape in *its* ordinary course of business. The critical issue here is whether the videotape was produced in the ordinary course of business as part of an insurance investigation. The court finds that the facts of the instant case indicate that it was.

The first important fact is the point at which an attorney became involved on the side of the party claiming the work-product protection. "The involvement of an attorney makes it more likely than not that the focus has shifted toward litigation, making materials more likely to have been prepared in anticipation of litigation." *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000), *cited in* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE §§ 26.70[3][c][i], at 26-220.3 (3d ed. 1999). Chip Huffman, the co-owner of Nitetrain, stated in his deposition that in response to a letter from Plaintiff Myer's counsel advising of the potential for a lawsuit, he reported the accident to his insurance

ORDER – 3

company. (Kohles Decl. Ex. C). Thus, at first glance, it appears that the insurance company could have requested the videotape in anticipation of litigation. However, Mr. Huffman indicated that after reading the letter, he merely reported the *accident* to the insurance company, not necessarily the threat of a lawsuit. Shortly after this report, the insurance company requested the videotape from Mr. Huffman. After the videotape was created, the insurance company obtained an attorney. Indeed, Defendants do not argue that the videotape was prepared with—or even subsequent to—the involvement of an attorney. Instead, they argue that attorney involvement is irrelevant. Although absence of a lawyer in the preparation is not dispositive, the fact that an attorney was obtained by the insurance company only after the videotape was submitted is significant. Here, the facts suggest that the insurance company conducted an investigation by requesting the videotape and reviewing the videotape, thereafter concluding that legal representation was necessary. Because requesting and reviewing the videotape was the first action that the insurance company took, and because it only later obtained counsel, the videotape procurement was likely part of a routine investigation.

The timing of the procurement of the videotape is also significant. Jack Winter stated that the videotape was made probably within a week of the accident, and no later than July 13, 2004, three weeks after the accident. This close proximity suggests that the videotape was part of an investigation of the accident. Moreover, Mr. Winter contends that the videotape focuses on the reconfiguration of the bunks, which could indicate the reason for the failure of the bunks. These additional circumstances surrounding production of the videotape therefore also support the conclusion that it was produced as part of an accident investigation.

Due to (1) the chronology of attorney involvement after creation of the videotape, (2) the short time period between the accident and the videotape creation, and (3) the content of the videotape, the Court finds that the videotape was created as part of the insurance company's "routine duty" to investigate accidents. Accordingly, the videotape is not "work product."

//

ORDER – 4

**B.     Substantial Need**

Even if the videotape could be characterized as work product, it would be discoverable in any event, because Plaintiffs have shown substantial need for the videotape. Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that a party may discover documents "prepared in anticipation of litigation . . . only upon showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED. R. CIV. P. 26(b)(3). As one district court has explained, in order to demonstrate substantial need, the court examines: (1) "whether the information is an essential element in the requesting party's case" and (2) "whether the party requesting discovery can obtain the facts from an alternate source." *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000) (citing 6 MOORE ET AL., *supra* §§ 26.70[5][c], at 26-221 to 26-222).

The videotape involves facts which may be essential elements of Plaintiffs' negligence claim. The reconfiguration process in the videotape is demonstrated by Jack Winter, the employee who performed the same reconfiguration to Plaintiffs' bunks prior to the incident. Thus, how the reconfiguration process was performed likely is relevant to determining liability issues in Plaintiffs' negligence claim. Further, although the videotape is not a contemporaneous account of the event, as discussed *supra*, it was produced within a very short time of the accident by the same person who reconfigured the bunks shortly before the Plaintiffs used them. Finally, Plaintiffs cannot obtain the information within the videotape in other ways. Defendants argue that Plaintiffs were able to depose Jack Winter, and that his deposition is equivalent to the videotape. However, deposing a witness two years after the accident puts into question the accuracy of the witness's memory. In comparison to Jack Winter's demonstration of the reconfiguration in the videotape shortly after the accident, the deposition of Jack Winter is less reliable.

Because Plaintiffs have demonstrated that the videotape speaks to an essential element of their claim and obtaining the same information from another source is doubtful, they have demonstrated a substantial need for the videotape.

ORDER – 5

### III. CONCLUSION

For the reasons set forth in this Order, Plaintiffs' Motion to Compel is hereby GRANTED in its entirety. Defendants must produce to Plaintiffs the requested videotape.

SO ORDERED this 2nd day of March, 2007.

*John C. Coughenour*

John C. Coughenour

United States District Judge

ORDER – 6